Anthony Finley WILLIFORD,
Appellant,

v.

STATE of Texas, Appellee.

No. 11–02–00074–CR.

Court of Appeals of Texas,
Eastland.

Jan. 15, 2004.

computer. Thus, appellant argues that the State did not establish the proper predicate for admission of the pictures. In his second issue, appellant asserts that the seizure of his computer was illegal because there was no search warrant and no exception to the requirement for a warrant. In his third issue, appellant asserts that his consent to search the computer was involuntary due to unlawful police conduct—the seizure of the computer—occurring immediately prior to the request for consent.

Fred I. Franklin, Jr., Brownwood, for appellant.

Skylar B. Sudderth, Micheal Murray, Assistant Dist. Atty., for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and TERRY McCALL, J.

Opinion

TERRY McCALL, Justice.

The jury convicted Anthony Finley Williford of 34 counts of the third degree felony of possession of child pornography. TEX. PENAL CODE ANN. § 43.26 (Vernon 2003). The jury assessed punishment at 10 years confinement and a $10,000 fine for each count. We affirm.

## Issues Presented

Appellant presents three issues for review. In his first issue, appellant asserts that the trial court erred in failing to exclude State's Exhibit Nos. 1–32 and 34–36 as evidence. Specifically, appellant contends that, under *Kelly v. State*, 824 S.W.2d 568 (Tex.Cr.App.1992), the State's witness, Detective Larry Owings of the Brownwood Police Department, was not qualified to testify as an expert witness regarding the scientific technique that he used to reproduce pictures—State's Exhibit Nos. 1–32 and 34–36—from appellant's

## Background Facts

In October 2000, appellant took his computer to Brownwood Computer Innovations (BCI) in Brownwood, Texas, for repairs. Appellant told a BCI employee that his internet camera would not come on any more and that his digital camera would not download pictures. Joshua Evan Terrill, a technician at BCI, worked on the computer. Terrill believed that appellant's statement that the internet camera would not come on any more meant that the camera had worked properly at one time. If the camera had worked properly, it would have stored pictures somewhere on the computer. Terrill attempted to determine where the pictures were stored. He examined the "My Documents" folder on the computer. When he was scrolling through the "My Documents" folder, a thumbnail picture of two naked boys on a bed popped up in the margin of the folder. Terrill reported his finding to his supervisor, Will James Stewart. Stewart told the store manager, Robert John Ellison, about the picture. Ellison shut down the computer; took it into the office of his supervisor, Pat McLaughlin; and reported the matter to McLaughlin. McLaughlin kept the computer locked up in his office and contacted BCI's attorney to obtain advice on how to handle the situation.

On November 8, 2000, appellant went to BCI to check on his computer. McLaughlin talked with appellant about the picture that had been found on appellant's computer. Appellant told McLaughlin that he did not see how the picture could be illegal because it was on the internet. McLaughlin gave appellant the choice of appellant calling the police or McLaughlin calling the police. Appellant told McLaughlin to go ahead and call the police. McLaughlin called the Brownwood Police Department while appellant was still at BCI. Detective Owings arrived at BCI to investigate the case.

Detective Owings spoke to Terrill and McLaughlin before speaking with appellant. Terrill described the picture that he had found on the computer. Detective Owings read appellant his *Miranda*[1] rights, and appellant signed a waiver-of-rights form. Appellant acknowledged to Detective Owings that the picture existed on the computer. Detective Owings believed that the picture was child pornography and, therefore, contraband. Detective Owings told appellant that he was going to seize the computer. Detective Owings believed that seizure of the computer was the only way to ensure that the evidence would be preserved.

Detective Owings asked appellant for permission to search the hard drive of the computer. Appellant gave him oral and written permission to search the computer. Detective Owings took appellant's computer and gave appellant a receipt for it. He took the computer to the Brownwood Police Department. Detective Owings copied the data on appellant's computer to another hard drive using the software EnCase. Appellant's counsel objected to Detective Owings's testimony regarding the use of EnCase and the images copied by it on the ground that Detective Owings was not qualified as an expert to testify about the theory or technique in developing the EnCase software or its reliability. Appellant's counsel argued that, therefore, the pictures that Detective Owings copied from appellant's computer were inadmissible.

Detective Owings testified about his computer knowledge. He is the computer expert for the Brownwood Police Department. When a case involves computers or the internet, it is assigned to him. He performs forensic examinations of computers for the Brownwood Police Department and other agencies. The Brownwood Police Department purchased the EnCase software in 2000. Detective Owings testified that he was familiar with EnCase, knew how to use it, and had successfully used it in the past. Detective Owings said that forensics involves the acquisition, authentication, and reconstruction of information located on a computer hard drive and that the EnCase software is able to perform each of these three steps. He said that, by using EnCase, he successfully copied the data on appellant's hard drive to another hard drive. Detective Owings also testified that EnCase is used worldwide and that various agencies, including the United States Postal Service, use EnCase. He also testified that there have been several articles written about EnCase and other computer forensic software programs comparing one to the other. He said that SC Magazine did a test on several forensic softwares, including EnCase, and gave EnCase an overall five-star rating out of five stars. He said that EnCase has a low potential rate of error. The trial court overruled appellant's objections and admitted the pictures—State's Exhibit Nos. 1–32 and 34–36—into evidence.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

### Admissibility of Images Copied By Using EnCase

■ Detective Owings used EnCase to copy the data stored on appellant's hard drive onto another hard drive. The State's Exhibit Nos. 1–32 and 34–36 were not printed from appellant's computer. Rather, Detective Owings printed them from the "mirror image" of appellant's hard drive that he made using EnCase. Appellant argues that the State did not present the proper predicate for the admission of the exhibits because Detective Owings was not qualified as an expert to testify regarding the scientific theory or technique used to develop EnCase or the reliability of EnCase. Therefore, appellant argues that the exhibits should have been excluded under *Kelly v. State, supra.* The State argues that Detective Owings's testimony satisfied the *Kelly* criteria. Alternatively, the State asserts that expert testimony was not necessary to establish the admissibility of its exhibits. In this regard, the State contends that EnCase is the equivalent of a photocopier for computers; that the user of EnCase does not have to be an expert on its scientific theory, scientific technique, or reliability to operate it properly; and that the user, much like a person pushing a photocopier button, enters keyboard commands causing EnCase to copy the contents of a hard drive.

■ We need not address the State's alternative argument because an analysis of Detective Owings's testimony under *Kelly* disposes of appellant's first issue. *Kelly* provides that, to be reliable, evidence derived from a scientific theory must satisfy three criteria: (a) the underlying scientific theory must be valid; (b) the technique applying the principle must be valid; and (c) the technique must have been properly applied on the particular occasion. *Kelly v. State, supra* at 573. Factors that affect the trial court's proper

determination of these three criteria include, but are not limited to, the following: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such community can be ascertained; (2) the qualifications of any expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of any person who applied the technique on the occasion in question. *Kelly v. State, supra.* We review the trial court's decision as to the admissibility of evidence under an abuse of discretion standard. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Cr. App.2000); *Kelly v. State, supra* at 574.

We find that Detective Owings's testimony satisfied the *Kelly* criteria for reliability. Detective Owings provided testimony on each of the seven factors identified in *Kelly.* Detective Owings is the computer expert for the Brownwood Police Department and is knowledgeable about EnCase. He testified that EnCase is generally accepted in the computer forensic investigation community, that EnCase is used worldwide, that he knew how to use EnCase, that he knew how EnCase worked, that he had successfully used EnCase in the past, that EnCase can be tested by anyone because it was commercially available and anyone could purchase it, that EnCase has been tested, that there have been several articles written about EnCase and other computer forensic software programs, that SC Magazine gave EnCase an overall five-star rating out of five stars, that EnCase has a low poten-

tial rate of error, that he successfully copied appellant's hard drive by using EnCase, and that EnCase verified that he had successfully copied appellant's hard drive. Detective Owings described in detail for the trial court how EnCase worked. Detective Owings's testimony established EnCase's reliability. The trial court did not abuse its discretion in admitting State's Exhibit Nos. 1–32 and 34–36. Appellant's first issue is overruled.

### Seizure of Appellant's Computer

 Appellant asserts that Detective Owings's seizure of his computer without a warrant was illegal. In the absence of consent or a warrant, a police officer must have probable cause to effect a seizure. *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). A police officer has probable cause to seize an item if "the facts available to the officer would warrant a man of reasonable caution in the belief that certain items may be contraband or stolen property or useful as evidence of a crime." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (Citation and internal quotations omitted); *Waugh v. State*, 51 S.W.3d 714, 717 (Tex.App.-Eastland 2001, no pet'n). Terrill told Detective Owings about the thumbnail image of the two naked boys on appellant's computer. Detective Owings testified that, based upon his discussion with Terrill, he believed that the image constituted child pornography and, therefore, contraband. Detective Owings testified that he believed that he had probable cause to seize the computer and told appellant that he was going to seize it. The facts available to Detective Owings at the time that he seized the computer "would warrant a man of reasonable caution in the belief" that the computer contained contraband or contained evidence of a crime. Thus, the seizure of appellant's computer was proper. *Texas v. Brown, supra.* The trial court did not abuse its discretion in denying appellant's motion to suppress on the seizure issue. Appellant's second issue is overruled.

### Voluntariness of Appellant's Consent to Search

Appellant's contention that his consent to the search of his computer was involuntary is based on the premise that the seizure of his computer was illegal. Appellant argues that his consent was tainted by the illegal seizure. We have held that the seizure was proper. Therefore, appellant's third issue is overruled.

### This Court's Ruling

The judgment of the trial court is affirmed.