**Roger Lee SANDERS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–05–00030–CR.**

Court of Appeals of Texas, Waco.

March 8, 2006.

Leigh W. Davis, Fort Worth, for appellant.

Tim Curry, Tarrant County Crim. Dist. Atty., Fort Worth, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

Appellant Roger Sanders was sentenced to life in prison after his conviction on ten counts of aggravated sexual assault of a child under the age of fourteen. Sanders appeals, asserting four issues. We will affirm.

### Background

C., Sanders's former stepdaughter, testified that Sanders began sexually abusing her in the fall of 1999, when C. was eleven. Sometimes during the abuse, Sanders made C. look at child pornography on his computer or at pornographic movies. The abuse continued until 2002, when the marriage between C.'s mother and Sanders ended in separation and divorce. After C. reported the abuse, police obtained and executed a search warrant at Sanders's apartment, seizing a computer and various disks containing a large amount of child pornography.

### Jury Argument

■ In his first issue, Sanders complains of the State's rebuttal jury argument during guilt-innocence. The prosecutor first argued: "If you want to find [Sanders] not guilty, you need to be prepared to tell that girl to her face you believe her to be a liar." Sanders objected to that argument as outside the record, and the trial court sustained the objection and instructed the jury to disregard it.

The prosecutor then argued, over Sanders's objections that it was outside the record and outside the scope of the law, the following:

> If you find this gentleman not guilty, then you are saying that [C.] is a liar, and that is not the case.

> Not guilty would mean that [C.] has lied to you, and that is not what the evidence shows in this case.

The trial court overruled the objections, and after the jury retired, Sanders's motion for mistrial was denied. On appeal, Sanders asserts that the jury argument was improper, complaining that the argument was designed to inflame the jury and to bolster the victim's credibility.

■ Jury argument is limited to: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answers to argument of opposing counsel; or (4) a plea for law enforcement. *Guidry v. State*, 9 S.W.3d 133, 154 (Tex.Crim.App. 1999); *Sandoval v. State*, 52 S.W.3d 851, 857 (Tex.App.-Houston [1st Dist.] 2001, pet. ref'd). To determine whether a party's argument properly falls within one of these categories, we must consider the argument in light of the entire record. *Sandoval*, 52 S.W.3d at 857.

■ It is improper for a prosecutor to bolster the victim's testimony by injecting the prosecutor's personal opinion about the victim's honesty and truthfulness. *Flores v. State*, 778 S.W.2d 526, 528 (Tex.App.-Corpus Christi 1989, no pet.) (citing *Menefee v. State*, 614 S.W.2d 167, 168 (Tex. Crim.App.1981) ("I don't believe I have ever seen anybody that I thought was any more honest than she is" held to be improper argument), *citing Puckett v. State*, 168 Tex.Crim. 615, 330 S.W.2d 465 (Tex. Crim.App.1959) ("I'm telling you that they are telling the truth" held to be improper argument, requiring reversal)). But the arguments at issue were not bolstering the victim's credibility; they were a reason-

able deduction from the evidence on the credibility issues in the case. *See Loar v. State,* 627 S.W.2d 399, 401 (Tex.Crim.App. [Panel Op.] 1981) (upholding propriety of "And if you want to acquit, then you have to believe that the three police officers got together and lied about everything."). Additionally, the prosecutor's arguments were in response to defense counsel's arguments attacking C.'s credibility, which was one of the main themes of the defense argument. As a response to the defense argument, the prosecutor's rebuttal was proper. *E.g., Wylie v. State,* 908 S.W.2d 307, 310 (Tex.App.-San Antonio 1995, pet. ref'd); *see also Lange v. State,* 57 S.W.3d 458, 467–69 (Tex.App.-Amarillo 2001, pet. ref'd). We overrule the first issue.

### Extraneous–Offense Evidence

Sanders's second issue complains of the admission of extraneous-offense evidence (alleged child pornography), claiming: (1) the State did not timely inform Sanders of its intent to use evidence that he possessed child pornography; (2) the trial court erred in denying his motion for continuance to examine the evidence; and (3) the trial court erred by admitting the photographs at the punishment stage after finding them inadmissible during guilt-innocence.

The State gave notice of its intent to offer extraneous-offense evidence on November 19, 2004, about eleven days before jury selection began. The State filed an amended notice on November 23, about two weeks before the punishment phase (when the evidence at issue was actually admitted). Sanders had filed a motion for discovery that included a request that the trial court order the State to give reasonable pretrial notice of its intent to offer extraneous-offense evidence, but the trial court did not rule on this request.

■ We review the trial court's admission of extraneous-offense evidence for abuse of discretion. *Moses v. State,* 105 S.W.3d 622, 627 (Tex.Crim.App.2003). On the defendant's timely request to the attorney for the State, notice of intent to introduce extraneous-offense evidence must be given by State in the same manner required by Rule of Evidence 404(b). Tex. Code Crim. Proc. Ann. art. 37.07, § 3(g) (Vernon Supp.2005). A defendant's motion requesting the court to order the State to provide notice of intent to present extraneous-offense evidence is insufficient to trigger the notice requirement of article 37.07. *Mitchell v. State,* 982 S.W.2d 425, 427 (Tex.Crim.App.1998); *see also Simpson v. State,* 991 S.W.2d 798, 801 (Tex.Crim.App. 1998) (holding defendant's motion requesting the court to order the State to provide notice of intent to offer extraneous-offense evidence insufficient to trigger notice requirement); *Espinosa v. State,* 853 S.W.2d 36, 39 (Tex.Crim.App.1993) ("when a defendant relies on a motion for discovery to request notice pursuant to Rule 404(b), it is incumbent upon him to secure a ruling on his motion in order to trigger the notice requirements of that rule."). Because Sanders neither made a request for notice nor secured a ruling on his motion for an order to the State to provide notice, the trial court did not abuse its discretion in admitting the extraneous-offense evidence over Sanders's untimely-notice objection.

■■ Sanders next complains that the trial court abused its discretion in denying his motion for continuance (filed on November 24), contending that a continuance was necessary so his trial counsel could review the "voluminous" extraneous-offense material. The motion was premised on the State's alleged untimely notice of intent to introduce extraneous-offense evidence, which created the need for a continuance. We review a denial of a motion for

continuance for abuse of discretion. *Duhamel v. State*, 717 S.W.2d 80, 83 (Tex. Crim.App.1986). We have held above that Sanders did not make a request for such notice; thus, the trial court did not abuse its discretion in denying the motion for continuance.

■ The trial court ruled that the child pornography extraneous-offense evidence was inadmissible during guilt-innocence but allowed it during punishment. Sanders asserts that admission was error because the trial court should not be allowed to make such a reversal of position. Sanders cites no authority on point, referring generally to doctrines such as stare decisis, law of the case, and collateral estoppel. But as the State points out, extraneous-offense evidence admitted during punishment serves a different purpose from evidence admitted during guilt-innocence. *Compare* TEX.CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (Vernon Supp.2005) (character evidence, including prior acts demonstrating that character, admissible at punishment stage) *with* Tex.R. Evid. 404(b) (extraneous acts generally not admissible to show defendant's character). The trial court did not err in allowing the child pornography evidence during punishment. For all the above reasons, we overrule Sanders's second issue.

### Expert Testimony

■ In his third issue, Sanders complains of the trial court's admission of expert testimony from Jessie Lee, the State's forensic computer examiner who recovered the child pornography from computer media found in Sanders's apartment. Sanders asserts that the State failed to show that the testimony was sufficiently reliable. We review the trial court's admission of expert testimony for an abuse of discretion. *Weatherred v.* *State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).

■ To be reliable, evidence derived from a scientific theory must satisfy three criteria: (a) the underlying scientific theory must be valid; (b) the technique applying the principle must be valid; and (c) the technique must have been properly applied on the particular occasion. *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim. App.1992). Factors affecting the trial court's proper determination of these three criteria include, but are not limited to: (1) the extent to which the underlying scientific theory and technique are accepted as valid by the relevant scientific community, if such community can be ascertained; (2) the qualifications of any expert testifying; (3) the existence of literature supporting or rejecting the underlying scientific theory and technique; (4) the potential rate of error of the technique; (5) the availability of other experts to test and evaluate the technique; (6) the clarity with which the underlying scientific theory and technique can be explained to the court; and (7) the experience and skill of any person who applied the technique on the occasion in question. *Id.*

Lee, a certified peace officer and criminal investigator for the district attorney for four years, said that he performs computer forensic analysis daily. He had over 600 hours of training in his field, had attended various training programs in his field, and, at the time of trial, was certified by the International Association of Computer Investigation Specialists. His training included software programs like EnCase and Forensic Toolkit. EnCase is a "field standard" for forensic computer examination; treatises about EnCase have been published.

Lee explained that when he takes a hard drive from a computer, he uses a program like EnCase to automate the task of

searching and finding the files on it. An image of the drive is taken; the files are copied, and EnCase validates the copy by an "MD5 hash," a 128–bit algorithm that verifies the image. The MD5 hash is essentially a "digital fingerprint" of a drive, and if the hash values match, Lee said that "basically there's no chance" that an error occurred in making an exact duplicate of the original computer file.

Lee used EnCase on computer files taken from Sanders's computer. EnCase indexed the files, and Sanders was able to retrieve deleted files containing child pornography from Sanders's computer. We find that the trial court did not abuse its discretion in admitting Lee's testimony and the evidence from Sanders's computer in the punishment phase. *See Williford v. State*, 127 S.W.3d 309, 312–13 (Tex.App.-Eastland 2004, pet. ref'd) (finding similar testimony about EnCase reliable in child pornography case).[1] We overrule Sanders's third issue.

### Search and Seizure

■ The fourth issue asserts that the trial court erred in denying Sanders's motion to suppress the results (the computer media containing child pornography) of the search of Sanders's apartment. Sanders argues that the affidavit used to obtain the search warrant failed to demonstrate probable cause that the items sought were at the apartment.

■ We have previously articulated the standard of review of a trial court's denial of a motion to suppress where the warrant allegedly was not supported by probable cause:

Whether probable cause exists to support the issuance of a search warrant is determined from the "four corners" of the affidavit alone. *Massey v. State*, 933 S.W.2d 141, 148 (Tex.Crim.App. 1996).... According to *Guzman [v. State*, 955 S.W.2d 85 (Tex.Crim.App. 1997) ], when an appellate court reviews this type of question [mixed questions of law and fact when the resolution of those questions does not turn on an evaluation of credibility and demeanor], it is in as good a position as the trial court to resolve the issue, and therefore determines the issue independently, or de novo. 955 S.W.2d at 89. That is, we

---

1. In *Williford,* the court stated:

   We find that Detective Owings's testimony satisfied the *Kelly* criteria for reliability. Detective Owings provided testimony on each of the seven factors identified in *Kelly*. Detective Owings is the computer expert for the Brownwood Police Department and is knowledgeable about EnCase. He testified that EnCase is generally accepted in the computer forensic investigation community, that EnCase is used worldwide, that he knew how to use EnCase, that he knew how EnCase worked, that he had successfully used EnCase in the past, that EnCase can be tested by anyone because it was commercially available and anyone could purchase it, that EnCase has been tested, that there have been several articles written about EnCase and other computer forensic software programs, that SC Magazine gave EnCase an overall five-star rating out of five stars, that EnCase has a low potential rate of error, that he successfully copied appellant's hard drive by using EnCase, and that EnCase verified that he had successfully copied appellant's hard drive. Detective Owings described in detail for the trial court how EnCase worked. Detective Owings's testimony established EnCase's reliability. The trial court did not abuse its discretion....

   127 S.W.3d at 312–13; *see also Hernandez v. State*, 116 S.W.3d 26, 28–29 (Tex.Crim.App. 2003 ("once some courts have, through a *Daubert/Kelly* 'gatekeeping' hearing, determined the scientific reliability and validity of a specific methodology to implement or test the particular scientific theory, other courts may take judicial notice of the reliability (or unreliability) of that particular methodology.").

apply the same standard that the trial court applied when it evaluated the magistrate's decision to issue the search warrant on the basis of the affidavit. *Burke v. State*, 27 S.W.3d 651, 654 (Tex. App.-Waco 2000, pet. ref'd); *Lane v. State*, 971 S.W.2d 748, 752 (Tex.App.-Dallas 1998, pet. ref'd).

In determining de novo the issue before the trial court, we do not, however, determine independently, or de novo, if there was probable cause. *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983). The United States Supreme Court strictly prohibits such after-the-fact, de novo scrutiny. *Id.* Instead, we give great deference to the magistrate's decision to issue the warrant and determine whether, considering the totality of the circumstances, the magistrate had a "substantial basis for concluding probable cause existed." *Id.* at 238–39, 103 S.Ct. at 2332. This deferential standard of review of a magistrate's probable-cause determination promotes the United States Supreme Court's stated policy of preserving the incentive to peace officers to obtain a warrant instead of conducting warrantless searches. *Massachusetts v. Upton*, 466 U.S. 727, 733, 104 S.Ct. 2085, 2088, 80 L.Ed.2d 721 (1984).

*Morris v. State*, 62 S.W.3d 817, 821 (Tex. App.-Waco 2001, no pet.).

A request for a warrant must be supported by a sworn affidavit that sets out facts sufficient to support a finding of probable cause. Tex.Code Crim. Proc. Ann. art. 18.01(b) (Vernon 2005). Among other requirements, the facts asserted in the affidavit must be sufficient to show "that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place or thing to be searched." *Id.* art. 18.01(c)(3); *Mas-

sey*, 933 S.W.2d at 148. The allegations are sufficient if they would justify a conclusion that the items to be searched for are probably on the premises. *Ramos v. State*, 934 S.W.2d 358, 363 (Tex.Crim.App. 1996).

The affiant, Detective Carrol Starkey of the Tarrant County Sheriff's Department, stated in her February 2003 affidavit that she investigates physical and sexual abuse of children and has training in investigating child sexual exploitation. Through her training and experience, she has learned that child sexual abusers collect child pornography, which they usually cherish and keep in a secure place, such as a residence, to avoid detection by law enforcement. Starkey interviewed C., who told her that Sanders had sexually abused her and made her look at child pornography on his computer. Starkey also spoke with C.'s mother, who said that when Sanders moved out in August 2002, he took all the computers but later returned two, keeping at least one that Sanders still had in his apartment.

Sanders asserts that the information supporting the warrant was stale. In determining probable cause, the magistrate is required to rely on information that is not stale. *Morris*, 62 S.W.3d at 823. The proper method to determine whether the facts supporting a search warrant have become stale is to examine, in light of the type of criminal activity involved, the time elapsing between the occurrence of the events set out in the affidavit and the time the search warrant was issued. *Id.* When the affidavit recites facts indicating activity of a protracted and continuous nature, *i.e.*, a course of conduct, the passage of time becomes less significant. *Id.*

C. told Starkey that she was shown child pornography on Sanders's computer in March 2001 and that she had last seen it

in September 2001. C.'s mother told Starkey on January 31, 2003 that Sanders still had at least one of the computers that had been in the Sanders residence, and Sanders had taken it when he moved out in August 2002. Starkey's affidavit contained ample information—including Starkey's statement that child pornography is "usually kept and cherished, and rarely thrown away"—from which the magistrate had a "substantial basis" under the totality of the circumstances for concluding that probable cause existed that the computer and related storage devices were kept in Sanders's apartment and contained child pornography. *See id.* at 823–24; *Burke,* 27 S.W.3d at 655. The magistrate could have reasonably inferred that the information in the affidavit was not stale, and we accord that reasonable inference great deference. *Morris,* 62 S.W.3d at 824 (citing *Ramos,* 934 S.W.2d at 363). We conclude that the facts and circumstances submitted to the magistrate within the "four corners" of Starkey's affidavit provide a "substantial basis" for the magistrate's conclusion that child pornography would probably be found at Sanders's apartment at the time the warrant was issued, and therefore, the affidavit was sufficient to establish probable cause. Sanders's fourth issue is overruled.

### Conclusion

Having overruled all of Sanders's issues, we affirm the trial court's judgment.