COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-06-449-CR

 

 

DAMIEN THOMAS THIBOULT                                                APPELLANT

 

                                                   V.

 

THE STATE OF
TEXAS                                                                STATE

 

                                              ------------

 

           FROM
THE 213TH DISTRICT COURT OF TARRANT COUNTY

 

 

------------

MEMORANDUM OPINION[1]

                                              ------------      

I.  Introduction








Appellant Damien Thomas
Thiboult appeals his conviction by a jury for the offense of aggravated sexual
assault of a child under fourteen years of age. 
Thiboult raises four points arguing that the trial court improperly
denied his motion to suppress evidence, improperly permitted the prosecutor to
express his personal opinion during jury argument, improperly admitted a
picture of a confederate flag that was displayed on a wall in Thiboult=s residence, and improperly overruled his objection that the
prosecutor=s punishment
phase argument was outside the record. 
We will affirm.

II. Factual and Procedural Background

In October or November 2005,
R.A., an eleven-year-old child, alleged to Arkansas police that Thiboult had
sexually abused R.A. while R.A. was living in Euless, Texas.  (R.A.=s family had recently moved to Arkansas when R.A. came forward.)  Arkansas police tape recorded R.A.=s outcry statement and forwarded a copy of the recording to the Euless
police department in December 2005.  

After listening to the tape,
Euless police requested a search warrant for Thiboult=s apartment.  A magistrate
authorized the search warrant, and the Euless police executed it and discovered
several items incriminating Thiboult in the sexual abuse allegations.  








A grand jury indicted
Thiboult for the offenses of aggravated sexual assault of a child and indecency
with a child by sexual contact.  Thiboult
pleaded not guilty to all counts.  A
jury, however, found Thiboult guilty of two counts of aggravated sexual assault
of a child and one count of indecency with a child by contact.  After a separate punishment hearing, the jury
assessed Thiboult=s punishment
at sixty, forty, and ten years= confinement, respectively.  The
trial court sentenced Thiboult accordingly and ordered that the sentences run
concurrently.  Thiboult now appeals.

III.  Validity of the Search Warrant

In his first point, Thiboult
argues that the trial court erred by denying his motion to suppress items
seized from his apartment pursuant to the search warrant.  Thibout argues that the search warrant was
invalid because the facts supporting the probable cause affidavit were stale.








Whether the facts alleged in
a probable cause affidavit sufficiently support a search warrant is determined
by examining the totality of the circumstances. 
Illinois v. Gates, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332
(1983).  The allegations in a probable
cause affidavit are sufficient if they would justify a conclusion that the
object of the search is probably on the premises.  Ramos v. State, 934 S.W.2d 358, 363
(Tex. Crim. App. 1996).  Only the facts
found within the four corners of the affidavit may be considered.  Hankins v. State, 132 S.W.3d 380, 388
(Tex. Crim. App. 2004).  The magistrate
is not required to find proof beyond a reasonable doubt or by a preponderance
of the evidence, but must only find a probability that contraband or evidence
of the crime will be found in a particular place. Gates, 462 U.S. at 238‑39,
103 S. Ct. 2317.  In ascertaining whether
a search warrant is based on probable cause, the affidavit is interpreted in a
common‑sense, realistic manner, and the magistrate is entitled to draw
reasonable inferences from the facts contained therein.  Gibbs v. State, 819 S.W.2d 821, 830
(Tex. Crim. App.) cert. denied, 502 U.S. 1107 (1992).  The magistrate's determination of probable
cause is given great deference by the reviewing court.  Swearingen v. State, 143 S.W.3d
808, 811 (Tex. Crim. App. 2004).

In determining probable
cause, however, the magistrate may not rely on information in the probable
cause affidavit that is stale.  See
Gonzales v. State, 761S.W.2d 809, 813 (Tex. App.CAustin 1988, pet. ref=d).  Whether information is
stale depends on the nature of the property and the other circumstances of the
particular case.  Arrick v. State,
107 S.W.3d 710, 717 (Tex. App.CAustin 2003, pet. ref=d).








There is no set time limit on
how old information contained in a probable cause affidavit may be.  See Moore v. State, 456 S.W.2d 114
(Tex. Crim. App. 1970).  Just how long a
time may elapse without destroying the basis for a reasonable belief as to the
continuance of the situation set forth in the affidavit will vary according to
the facts of the individual case.  Id.;
Sanders v. State, 191 S.W.3d 272, 279 (Tex. App.CWaco 2006, pet. ref=d), cert. denied, 127 S. Ct. 1141 (2007).  The proper method to determine whether the
facts supporting a search warrant have become stale is to examine, in light of
the type of criminal activity involved, the time elapsing between the
occurrence of the events set out in the affidavit and the time the search
warrant was issued.  See Morris v.
State, 62 S.W.3d 817, 823 (Tex. App.CWaco 2001, no pet.). 

When the affidavit recites
facts indicating activity of a protracted and continuous nature (i.e., a course
of conduct), the passage of time between the occurrence of events set out in
the affidavit and the time the search warrant was issued becomes less
significant.  Sanders, 191 S.W.3d
at 279; Gonzales, 761 S.W.2d at 813. 
For example, in Sanders, a probable cause affidavit indicated
that the defendant possessed child pornography on his computer and had last
shown it to the child victim six months earlier.  191 S.W.3d at 279.  The officer executing the probable cause
affidavit had been told one month earlier that the defendant was still in
possession of the computer.  Id.  Because of the continuing nature of the
offense and because child pornography is usually kept and cherished by
perpetrators, and evaluating the totality of the circumstances, the appellate
court held that the magistrate could reasonably have inferred that the
information in the affidavit was not stale and that child pornography would
probably be found at Sanders=s apartment at the time the warrant was issued.  Id.








Turning to the probable cause
affidavit at issue here, it is dated December 2005 and indicates that Thiboult
began sexually assaulting R.A. in June 2004 in Euless and continued to sexually
assault R.A when he visited R.A. and R.A.=s family after they moved to Arkansas. 
The affidavit noted that Thiboult took Polaroid pictures of R.A. naked
and with handcuffs on, and that Thiboult stored the pictures in his Abottom dresser drawer.@  The affidavit explained that
the assaults had occurred repeatedly for more than one year and detailed
several specific instances of sexual abuse over the period beginning in 2004
and continuing through 2005.  The affiant
requested and obtained a search warrant to search Thiboult=s apartment for Avisual,
video, computer, storage media, floppy disks, camera, CD=s[,] handcuffs, audio, or any material depicting any of the following:
nudity, obscene material, sexual conduct, or sexual behavior.@ 

The type of criminal activity
involved here is the type of activity of a protracted and continuous nature
that makes the passage of time between the occurrence of the events set out in
the affidavit and the time that the search warrant was issued less
significant.  See Sanders,
191 S.W.3d at 279; State v. Stone, 137 S.W.3d 167, 178 (Tex. App. B Houston [1st Dist.] 2004, pet. ref=d); Morris, 62 S.W.3d at 823; Ramos, 934 S.W.2d at
362-63; Gonzales, 761 S.W.2d at 813. 
The affidavit here also stated that, before R.A. moved to Arkansas,
Thiboult took pictures of R.A. naked and handcuffed.  The affidavit indicated that Thiboult had
destroyed one of the photos of R.A. but was currently in possession of other
obscene photos that he had taken of R.A. and set forth the specific location of
the photosCThiboult=s bottom dresser drawer. 








The nature of the property
sought in this caseCphotos and
visual depictions of Anudity,
obscene material, sexual conduct, sexual behavior, or child pornography@Crenders the facts supporting its location less likely to go stale than
facts supporting the location of other forms of perishable property, such as
drugs.  See Sanders, 191 S.W.3d at
279.  Additionally, the magistrate was
free to infer that because Thiboult had specifically decided to keep certain
pictures of R.A. while destroying others and had selected a secure location for
the storage of the pictures of R.A. that he desired to retain (his bottom
dresser drawer), these items would probably be found in Thiboult=s apartment.  Examining the
totality of the circumstances set forth within the four corners of the probable
cause affidavit, and deferring to the magistrate=s issuance of a warrant based on a common‑sense, realistic
interpretation of the affidavit and the reasonable inferences from the facts
contained in the affidavit, including the nature of the criminal activity at
issue and the type of property to be seized, we cannot say that the magistrate
erred by issuing the search warrant.  See
Ramos, 934 S.W.2d at 362-63.








Thiboult nonetheless argues
that the case of Serrano v. State is controlling here.  123 S.W.3d 53, 61 (Tex. App.CAustin 2003, pet. ref=d).  Serrano is
distinguishable from the present case on at least two grounds.  First, Serrano involved a drug offense
and a search warrant to seize drugs, property that is of a more perishable and
disposable nature than photos specifically selected for retention by a
perpetrator of child sexual abuse.  123
S.W.3d at 60-61.  Second, the criminal
activity in Serrano did not involve a continuing course of conduct, but
simply possession of drugs.  Id. at
61.  The time element of facts alleged in
a probable cause affidavit are of less import here, where the affidavit alleges
a criminal activity of a continuing nature and seeks to search for property it
alleges that the suspect has specifically decided to retain, than when the
affidavit at best alleges possession of a drug by a suspect, as in Serrano.  See Sanders, 191 S.W.3d at 279; Arrick,
107 S.W.3d at 717; Gonzales, 761 S.W.2d at 813.  Accordingly, we overrule Thiboult=s first point.

IV.  Improper Jury Arguments

In points two and four,
Thiboult complains that the prosecutor engaged in improper jury argument by
making comments expressing her personal opinion during the guilt-innocence
phase of the trial and by referring to facts outside the record during the
punishment phase of trial. 








To be permissible, the State=s jury argument
must fall within one of the following four general areas:  (1) summation of the evidence; (2) reasonable
deduction from the evidence; (3) answer to argument of opposing counsel; or (4)
plea for law enforcement.  Felder v.
State, 848 S.W.2d 85, 94-95 (Tex. Crim. App.), cert. denied, 510
U.S. 829 (1993); Alejandro v. State, 493 S.W.2d 230, 231 (Tex. Crim.
App. 1973).

A prosecutor may argue
personal opinions concerning issues in the case so long as the opinions are
based on evidence in the record and do not constitute unsworn testimony.  Wolfe v. State, 917 S.W.2d 270, 280
(Tex. Crim. App. 1996); McKay v. State, 707 S.W.2d 23, 37 (Tex. Crim.
App. 1985), cert. denied, 479 U.S. 871 (1986); Morrison v. State,
No. 02-05-00443-CR, 2007 WL 614143, at *11 (Tex. App.CFort Worth Mar. 1, 2007, pet. ref=d) (mem. op) (not designated for publication).








For example, in Sikes,
the prosecutor=s statement,
AI think old James Sikes is just as guilty as he can be,A was not an improper injection of the prosecutor=s personal opinion.  Sikes v.
State, 500 S.W.2d 650, 652 (Tex. Crim. App. 1973).  In that case, the prosecutor made the
statement following a summation of the evidence and continued with, Aand I=ll tell you
why I think that.  I think we have proved
that to you beyond a reasonable doubt.@  Id.  Furthermore, after the trial court overruled
the objection to the statement, the prosecutor reiterated, AI think the evidence shows it, ladies and gentlemen.@  Id.  The court of criminal appeals evaluated
the offending statement in the context in which it was made and determined that
it was merely a reasonable deduction from the prosecutor=s analysis of the evidence.  Id.  Similarly, our court has held that the
statement, AThe
defendant in this case is guilty of the offense as charged,@ was an opinion based on a reasonable deduction from the evidence and
was, therefore, allowable when given in the context of a presentation of
evidence.  Morrison, 2007 WL
614143, at *11.

In this case, Thiboult
complains that the trial court should have recognized that the prosecutor=s statement, ADamien
Thiboult is guilty beyond a reasonable doubt of [c]ounts 1, 2, and 5 in this
indictment,@ was an
injection of the prosecutor=s personal opinion into closing arguments.  Thiboult=s argument, however, fails to account for the context in which the
prosecutor made the statement.  See
Wolfe, 917 S.W.2d at 280.  The
prosecutor opened her argument with the complained-of statement, but after the
trial court overruled Thiboult=s objection, the prosecutor continued, AHe=s guilty and
the evidence has shown that . . . .@  The prosecutor then proceeded
to address the elements of the charges and to connect the evidence heard by the
jury to each of the elements. 








Much like the prosecutors= statements in Sikes and Morrison, this statement, even though
it expressed a personal opinion, was given in the context of an analysis of the
evidence.  See Sikes, 500
S.W.2d at 652; Morrison, 2007 WL 614143, at *11.  Therefore, the statement was an acceptable
deduction from the evidence, and the trial court did not err by allowing
it.  See Wolfe, 917 S.W.2d at 280;
Felder, 848 S.W.2d at 94-95. 
Accordingly, we overrule Thiboult=s second point.

In his fourth point, Thiboult
complains of a statement by the prosecutor during the punishment phase of trial
in which the prosecutor said, 

You give him probation, you could walk out of the
courtroom with him

        .
. . .

Get on the elevator with him; you can follow him
home. 

 

Specifically, Thiboult alleges that this
statement was outside the record and that the trial court should have excluded
it upon his objection. 








The appellate courts of this
state have traditionally held that the general statement that a defendant given
probation could ride down the elevator with members of the jury is a proper
plea for law enforcement.  See Huseman
v. State, 96 S.W.3d 368, 376-77 (Tex. App.CAmarillo 2002, pet. ref=d) (holding that the prosecutor=s statement that if the jury gave the defendant probation, Ahe can ride the elevator down with you@ was a proper plea for law enforcement); Martinez v. State, 715
S.W.2d 725, 727 (Tex. App.CHouston [14th Dist.] 1986, pet. ref=d) (holding that the statement, ADo you want this defendant . . . to go home with you today and go down
that elevator with you? . . . Do you want him out there cruising . . . in your
neighborhood tonight?@ was a
proper plea for law enforcement); see also Diaz v. State, No.
14-00-01217-CR, 2002 WL 31398949, at *4 (Tex. App.CHouston [14th Dist.] Oct. 24, 2002, pet ref=d) (mem. op.) (not designated for publication); Sabogal v. State,
No. 11-99-00247-CR, 2000 WL 34235183, at *2 (Tex. App.CEastland July 27, 2000, no pet.) (mem. op.) (not designated for
publication).

In this case, the prosecutor
stated during closing arguments of the punishment phase of trial, 

I ask for justice.  Because justice delayed is justice
denied.  And that=s
exactly what probation is, delaying justice for this family.  You give him probation, you could walk out of
the courtroom with him.

. . . .

Get on the elevator with him; you can follow him home.

. . . .

Because that=s
what probation is. 

 

Given this context, the
prosecutor=s statement
was made as part of an argument that justice would be better served if the jury
sent Thiboult to the penitentiary instead of giving him probation.  Therefore, this was not an argument outside
the record but rather was a proper plea for law enforcement.  See Huseman, 96 S.W.3d at 376-77; Martinez,
715 S.W.2d at 727.  The trial court did
not err by overruling Thiboult=s objection that such a statement was outside the record.  See Felder, 848 S.W.2d at 94-95.  Accordingly, we overrule Thiboult=s fourth point.

 








V.  Admission of Improper Evidence

Thiboult=s third point alleges that the trial court erred by admitting into
evidence during the punishment phase of trial a picture of a confederate flag
hanging on a wall in Thiboult=s apartment.  Thiboult argues
that the picture was irrelevant and prejudicial.[2]  

Rulings on relevance should
be left largely to the trial court, relying on its own observations and
experience, and the appellate court will not reverse the trial court=s decision absent an abuse of discretion.  Moreno v. State, 858 S.W.2d 453, 463
(Tex. Crim. App.), cert. denied, 510 U.S. 966 (1993); Jones v. State,
119 S.W.3d 412, 415 (Tex. App.CFort Worth 2003, no pet.); Mayfield v. State, Nos.
02-05-00386-CR, 02-05-00387-CR, 2007 WL 938697, at *5 (Tex. App.CFort Worth Mar. 29, 2007, pet. ref=d) (mem. op.) (not designated for publication).








Appellate courts should give
great discretion to the trial courts in matters of relevancy, reversing only if
the trial court acts outside the zone of reasonable disagreement.  Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990) (op. on reh=g); Mayfield, 2007 WL 938697, at *5.  Moreover, an appellate court will sustain a
trial court=s decision
regarding admissibility of evidence if the evidence is admissible on any theory
of law applicable to the case, even when the trial court=s underlying reason for the decision is wrong.  Romero v. State, 800 S.W.2d 539,
543-44 (Tex. Crim. App. 1990); Mayfield, 2007 WL 938697, at *5.

Article 37.07, section
3(a)(1) of the code of criminal procedure governs the admissibility of evidence
during the punishment stage of a non-capital criminal trial.  McGee v. State, 233 S.W.3d 315, 318
(Tex. Crim. App. 2007).  That statute
provides that Aevidence may
be offered by the state and the defendant as to any matter the court deems
relevant to sentencing . . . .A Tex. Code Crim. Proc. Ann.
art. 37.07, ' 3(a)(1)
(Vernon Supp. 2007).  Evidence is
relevant to sentencing within the meaning of the statute if the evidence is Ahelpful to the jury in determining the appropriate sentence for a
particular defendant in a particular case.@  Rodriguez v. State, 203
S.W.3d 837, 842 (Tex. Crim. App. 2006).








In this case, the jury found
Thiboult guilty of a sexual assault. 
There was no evidence or testimony even hinting that Thiboult=s crime was racially motivated or that Thiboult=s views on race at all influenced his decision to sexually assault
R.A.  Given the circumstances of this
case and of the offender, we cannot say that a picture of a confederate flag
hanging on a wall in Thiboult=s apartment was relevant to the task before the jury, determining
Thiboult=s punishment for a non-racially-motivated sexual assault.  But cf. Jaynes v. State, 216 S.W.3d
839, 845-46 (Tex. App.CCorpus
Christi 2006, no pet.) (holding that evidence during the punishment
phase of a swastika and other symbols commonly associated with racism tattooed
on the defendant was relevant in a trial of a racially motivated crime); Tibbs
v. State, 125 S.W.3d 84, 86 (Tex. App.CHouston [14th Dist.] 2003, pet. ref=d) (same).








Having found error, we must
conduct a harm analysis to determine whether the error calls for reversal of
the judgment.  Tex. R. App. P. 44.2. 
If the error is constitutional, we apply rule 44.2(a) and reverse unless
we determine beyond a reasonable doubt that the error did not contribute to
appellant=s conviction
or punishment.  Tex. R. App. P. 44.2(a). 
Otherwise, we apply rule 44.2(b) and disregard the error if it did not
affect appellant=s
substantial rights.  Tex. R. App. P. 44.2(b); see Mosley
v. State, 983 S.W.2d 249, 259 (Tex. Crim. App.) (op. on reh=g), cert. denied, 526 U.S. 1070 (1999); Coggeshall v. State,
961 S.W.2d 639, 642-43 (Tex. App.CFort Worth 1998, pet. ref=d).  Admitting a  picture depicting the confederate flag in
this case was a non-constitutional error and therefore subject to a harm
analysis under rule 44.2(b).  See Tex. R. App. P. 44.2(b); Come v.
State, 82 S.W.3d 486 (Tex. App.CAustin 2002, no pet.).

A substantial right is
affected when the error had a substantial and injurious effect or influence in
determining the jury=s
verdict.  King v. State, 953
S.W.2d 266, 271 (Tex. Crim. App. 1997) (citing Kotteakos v. United States,
328 U.S. 750, 776, 66 S. Ct. 1239, 1253 (1946)); Coggeshall, 961 S.W.2d
at 643.  In making this determination, we
review the record as a whole.  See
Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 

In this case, the jury heard
testimony at the punishment stage from a detective who testified that six years
before R.A.=s outcry, a
nine-year-old child had accused Thiboult of sexual assault.  That child, who was sixteen years old at the
time of Thiboult=s trial,
testified that when she was nine years old, Thiboult had lain by her on the bed
in Thiboult=s bedroom,
where she was watching cartoons, and begun rubbing her stomach when a cousin
walked in on them.  A detective also
testified about a photo album found at Thiboult=s residence containing photos of multiple shirtless young boys.  R.A.=s mother additionally testified to the change in R.A.=s behavior and performance in school since the assaults.  








The jury then heard about
another incident in late 2000 where a police officer arrested Thiboult (on
traffic violations) with two young boys in his car and, upon searching the car,
discovered several pictures of Thiboult in his underwear holding children in
their underwear and individual pictures of children in their underwear.  The officer also discovered handcuffs and
binoculars. 

Finally, one of the boys who
was in the car when Thiboult was arrested in 2000 (he was eighteen years old at
the time of trial) testified about his and his brother=s interactions with Thiboult (his brother was the other child in the
car at the time of the 2000 incident, but had since committed suicide).  The eighteen-year-old testified that he had
traveled from Missouri of his own will upon hearing about the trial to tell the
jury about how Thiboult had sexually molested both him and his brother.  He gave explicit and detailed testimony about
Thiboult=s molestation of him when he was eleven, and of his brother when his
brother was nine. 








When the picture of the
confederate flag was admitted, it was part of a larger photo album containing
pictures of children.  The prosecutor
never pointed out the picture of the flag, but rather stated, A[W]ithout going through every picture in here, I just want to ask you
[the investigating detective] some questions. 
Are there some pictures of boys depicted without shirts here?@  The prosecutor then elicited
testimony solely about the pictures of the children before passing the
witness.  Additionally, in her closing
arguments to the jury, the prosecutor never mentioned the confederate flag
picture or any other pictures, whatsoever. 
Rather, the prosecutor solely focused on the testimony discussed above
to urge that justice required imposition of a life sentence.

We conclude that, in the
context of the entire case against Thiboult, the trial court=s error in allowing the picture of the confederate flag into evidence
did not have a substantial or injurious effect on the jury=s verdict and did not affect Thiboult=s substantial rights.  See
King, 953 S.W.2d at 271.  Thus, we
disregard the error.  See Tex. R. App. P. 44.2(b).  Accordingly, we overrule Thiboult=s third point.

IV.  Conclusion

Having overruled Thiboult=s four points, we affirm the trial court=s judgment.

 

SUE WALKER

JUSTICE

 

                                                                                                        

PANEL
B: LIVINGSTON, WALKER, and MCCOY, JJ.

                                                    

DO
NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:
January 3, 2008











[1]See Tex. R. App. P. 47.4.





[2]The
State contends that Thiboult failed to object at trial that the photo was
prejudicial.  But because we hold that
the trial court erred by admitting the photo over Thiboult=s
relevancy objection, we need not address the State=s
contention that Thiboult did not preserve his complaint concerning the
prejudicial nature of the photo.